[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 320.]

IN RE JUDICIAL CAMPAIGN COMPLAINT AGAINST CARR.

[Cite as *In re Judicial Campaign Complaint Against Carr*, 1996-Ohio-396.]

*Attorneys at law—Alleged judicial campaign violations—Enforcement of Canon*
*7 of the Code of Judicial Conduct and related disciplinary procedures in*
*Section 5, Rule II of the Supreme Court Rules for the Government of the*
*Judiciary.*

(No. 95-2194—Submitted May 8, 1996—Decided August 14, 1996.)

APPEAL from the Order of the Judicial Commission of the Supreme Court.

_____

{¶ 1} On October 10, 1995, Raymond Pianka filed a grievance against respondent, Cathleen Carr, with the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board"). Pianka alleged that Carr, a judicial candidate for Cleveland Municipal Court, knowingly misrepresented the qualifications of Raymond Pianka, her opponent, in a letter dated September 10, 1995, in which Carr references her opponent as "never [having] handled a single case in housing court as an attorney," in violation of Canon 7(B)(2)(f) of the Code of Judicial Conduct. Pianka further alleged that Carr personally solicited campaign funds during the course of her campaign by signing a fundraising letter postmarked June 4, 1995, thereby personally soliciting campaign funds in violation of Canon 7(C)(2)(a).

{¶ 2} The board, finding probable cause that a violation had occurred, filed a complaint against Carr on Monday, October 16, 1995, and scheduled a hearing for Monday, October 23, 1995, at 10:00 a.m. before a panel of three board members. The secretary of the board mailed a copy of the complaint and notice of the hearing to both Carr and Pianka on October 16, 1995.

**{¶ 3}** On Friday, October 20, 1995, counsel for Carr filed a motion to continue the hearing. Carr claimed that she had not received notice of the complaint until approximately 10:00 p.m. on October 18, 1995 and did not have adequate time to review the allegations made against her. The motion was denied the same day. Carr's counsel renewed the motion to continue before the hearing began on Monday, October 23, 1995. It was again denied and the hearing went forward.

**{¶ 4}** Pianka appeared and testified. Carr chose not to attend the hearing because of a "scheduling conflict" but was represented by counsel. Following the hearing, the panel issued a report finding there was clear and convincing evidence that Carr had violated Canon 7. The panel recommended that a cease and desist order be issued against Carr and a $1,000 sanction be assessed against her.

**{¶ 5}** The Supreme Court appointed a five-member judicial commission that reviewed the panel's determination. The commission issued its report on November 3, 1995, prior to the election on November 7, 1995, which affirmed the finding of the panel.

**{¶ 6}** This cause is now before this court on appeal from the order of the Judicial Commission.

---

*Brunner & Brunner* and *Jennifer L. Brunner,* for complainant.

*Armstrong, Mitchell & Damiani, Louis C. Damiani* and *Bruce A. Zaccagnini,* for respondent.

---

**STRATTON, J.**

**{¶ 7}** This is the first case in which this court is asked to review enforcement of Canon 7 of the Code of Judicial Conduct and related disciplinary procedures in Section 5, Rule II of the Supreme Court Rules for the Government of the Judiciary.

**{¶ 8}** Canon 7 was revised as a result of a review of Ohio's judicial election system by the Citizens' Committee on Judicial Elections established by the

Supreme Court in 1994. The committee tackled issues of campaign conduct, campaign finance, enforcement and sanctions, and the public's perception of the judicial system in Ohio and proposed what ultimately became Canon 7. The new canon was adopted by the Supreme Court on April 25, 1995 and became effective on July 1, 1995.

{¶ 9} The court adopted an expedited grievance process to review llegations of campaign violations and to promptly resolve complaints. Gov. Jud. R. II(5) was intended to enforce Canon 7 within the short time frame of a campaign by providing for prompt deadlines for each step of the grievance process through the final resolution. Until the adoption of this expedited procedure, the disciplinary procedures of Rule V of the Supreme Court Rules for the Government of the Bar applied to all grievances involving the bar and judiciary, including grievances involving alleged judicial campaign violations. Under Gov. Bar R. V, the Board of Commissioners on Grievances and Discipline often did not resolve complaints of alleged campaign violations until well after the election when the damage had already occurred and any remedy or sanction was rendered meaningless.

{¶ 10} Carr contends she was deprived of her right to due process of law because the panel strictly adhered to the expedited procedures of Gov. Jud. R. II(5) and denied her request to continue the hearing. The board mailed to Carr notice of the filing and a copy of the grievance on October 10, 1995, and a copy of the complaint on October 16, 1995. The complaint set forth specific, straightforward facts which would not require substantial preparation in order to respond. These proceedings were to be conducted on an expedited basis.

{¶ 11} The standards of due process in a disciplinary proceeding are not equal to those in a criminal matter. *Ohio State Bar Assn. v. Illman* (1976), 45 Ohio St.2d 159, 162, 74 O.O.2d 284, 285, 342 N.E.2d 688, 690. A disciplinary proceeding is instituted to safeguard the courts and to protect the public from the misconduct of those who are licensed to practice law, and is neither a criminal nor

a civil proceeding. *Ohio State Bar Assn. v. Weaver* (1975), 41 Ohio St.2d 97, 100, 70 O.O.2d 175, 177, 322 N.E.2d 665, 667.

{¶ 12} A license to practice law is a privilege to which there are attendant rights and duties. Therefore, an attorney has a duty to cooperate when called upon to assist in an investigation or to testify at a hearing in an disciplinary matter. Gov. Bar. R. V(4)(G). Although the burden may be upon the complainant to prove the allegations, the respondent who chooses not to testify or otherwise present evidence to refute the allegations made assumes the risk of adverse findings. The panel did not abuse its discretion when it refused to continue the hearing in light of the expedited nature of the proceeding and Carr's nebulous reason of a "scheduling conflict." The panel duly noted that business of the Supreme Court of Ohio takes precedence over any other professional commitments.

{¶ 13} The court is mindful of the purposes of the time constraints in Gov. Jud. R. II(5). However, because of the severity of the sanctions available for a violation of Canon 7, *i.e.*, suspension from the practice of law, removal from public office, or disbarment, a respondent's rights of due process must be carefully balanced against the complainant's need for an expedited hearing on alleged violations. It is necessary that the Board of Commissioners on Grievances and Discipline, or the panel appointed by the board, be given discretion when handling an expedited matter under Gov. Jud. R. II(5).

{¶ 14} In balancing the parties' rights to a hearing with the parties' rights of due process, the board should take into consideration the immediacy of the alleged violation, the complexity of the complaint, when the respondent received notice of the hearing, whether a weekend intervenes to shorten the five-day period, and the parties' difficulty in obtaining documentation and/or witnesses to prove a case. Most of these cases can and should be heard within the five-day period giving due weight to all of the above considerations.

**{¶ 15}** In this case, by her absence, Carr was unable to refute the evidence presented by Pianka. The issues were straightforward and simple and required little preparation. What did Carr know about her opponent before making her claims of his lack of experience? Did she sign the fundraising letter? Had she honored her duty to cooperate under Rule II(5), she may have been able to refute these charges. But in presenting neither a solid nor credible reason for her absence and a need for a continuance, the panel of the board was within its discretion to deny her continuance. Because Carr chose not to cooperate with the panel and did not present any evidence on her behalf to refute the allegations against her, the panel concluded there was clear and convincing evidence that Carr had violated Canon 7. For these reasons, this court affirms the order of the judicial commission.

*Order affirmed.*

MOYER, C.J., F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS, J., concurs in judgment only.

COOK, J., concurs in judgment

RESNICK, J., dissents.

––––––––––––––––––

**COOK, J, concurring in judgment.**

**{¶ 16}** Although I agree with the judgment of the majority to affirm the order of the commission, I think the majority errs in not upholding the judicial rule as written.

**{¶ 17}** This court balanced the process due a respondent against the importance of the public's interest in fair campaigning when we adopted this expedited grievance process. A necessary part of that balancing was consideration of the severity of the sanctions that may be imposed. We assessed the various competing interests and concluded that, with five days' notice and the right to a hearing and an appeal, the respondent would have been accorded the rudimentary protections of procedural due process, sufficient under the circumstances, to

withstand a constitutional challenge. See *In re Ruffalo* (1968), 390 U.S. 544, 88 S.Ct.1222, 20 L.Ed.2d 117.

{¶ 18} No further "balancing" need be done by judicial panels. The majority provides a laundry list of factors to be considered by such panels which can only serve to obviate the letter and the intent of the expedited procedure we adopted. In fact, the laundry list of factors includes "tak[ing] into consideration the immediacy of the alleged violation," thereby permitting panels to evaluate *whether* the complaint even deserves "expedited" treatment.

{¶ 19} By enforcing the rule as written, we provide predictability. A bright-line rule affords that predictability; a five-part balancing test does not.

{¶ 20} Given the purposes of the expedited hearing process, I would hold that, for any hearing scheduled in accordance with Gov. Jud. R. II(5), due process is sufficient under the circumstances.

———————————

**ALICE ROBIE RESNICK, J., dissenting.**

{¶ 21} I would dismiss, since I find that the allegations of the complaint were not established by clear and convincing evidence.

———————————