SCHUCKER ET AL., APPELLANTS, *v.* METCALF, JUDGE, ET AL.,
APPELLEES.

[Cite as Schucker *v.* Metcalf (1986), 22 Ohio St. 3d 33.]

(No. 85-40—Decided January 29, 1986.)
(Modified Upon Reconsideration March 12, 1986.)

*C. William Malone* and *J. Raymond Prohaska,* for appellants.

*Vorys, Sater, Seymour & Pease, Robert E. Leach* and *Bruce L. Ingram,* for intervenor appellees.

*Per Curiam.*

A

First, we consider the question of whether the issues in the underlying action are within the jurisdiction of the probate division of the court of common pleas.

We begin by noting that "the power to define the jurisdiction of the courts of common pleas rests in the General Assembly and * * * such courts may exercise only such jurisdiction as is expressly granted to them by the legislature." *Seventh Urban, Inc.* v. *University Circle* (1981), 67 Ohio St. 2d 19, 22 [21 O.O.3d 12]. "The court of common pleas is a court of general jurisdiction. It embraces all matters at law and in equity that are not denied to it. * * * The probate court is a court of limited jurisdiction; it can exercise just such powers as are conferred on it by statute and the constitution of the state * * *." *Saxton* v. *Seiberling* (1891), 48 Ohio St. 554, 558-559.

The jurisdiction of the probate court is set forth in R.C. 2101.24:

"Except as otherwise provided by law, the probate court has jurisdiction:

"(A)  To take the proof of wills and to admit to record authenticated copies of wills executed, proved, and allowed in the courts of any other state, territory, or country. If the probate judge is unavoidably absent, any judge of the court of common pleas may take proof of wills and approve bonds to be given, but the record of these acts must be preserved in the usual records of the probate court.

"(B)  To grant and revoke letters testamentary and of administration;

"(C)  To direct and control the conduct and settle the accounts of executors and administrators and order the distribution of estates;

"(D)  To appoint and remove guardians and testamentary trustees, direct and control their conduct, and settle their accounts;

"(E)  To grant marriage licenses;

"(F)  To make inquests respecting persons who are unable to manage their property and affairs effectively for reasons such as mental illness, mental deficiency, or physical illness or disability, subject to guardianship;

"(G)  To qualify assignees, appoint and qualify trustees and commissioners of insolvents, control their conduct, and settle their accounts;

"(H)  To authorize the sale of lands, equitable estates, or interests therein, and the assignments of inchoate dower in such cases of sale, on petition by executors, administrators, and guardians;

"(I)  To authorize the completion of real contracts on petition of executors and administrators;

"(J)  To issue writs of habeas corpus, and determine the validity of the caption and detention of the persons brought before it on the writs. The probate court may refer a petition for a writ of habeas corpus to the court of common pleas if the petitioner is detained on a charge, indictment, or conviction of having committed a felony or misdemeanor under the laws of the United States or this state, or under an ordinance of any political subdivision of this state.

"(K)  To construe wills;

"(L)  To render declaratory judgments, including, but not limited to, those rendered pursuant to section 2107.084 of the Revised Code;

"(M)  To direct and control the conduct of fiduciaries and settle their accounts;

"(N)  To authorize the sale or lease of any estate created by will if the estate is held in trust, on petition by the trustee;

"(O)  To terminate a testamentary trust in any case in which a court of equity may do so;

"(P)  To hear and determine actions to contest the validity of wills;

"(Q)  To make a determination of the presumption of death of missing persons and to adjudicate the property rights and obligations of all parties affected thereby;

"(R)  To hear and determine an action commenced pursuant to section 3107.41 of the Revised Code to obtain the release of information pertaining to the birth name of the adopted person and the identity of his biological parents and biological siblings.

"The jurisdiction listed in this section is exclusive in the probate court unless otherwise provided by law.

"The probate court shall have plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by statute.

"The jurisdiction acquired by a probate court over a matter or proceeding is exclusive of that of any other probate court, except when otherwise provided by law."

Pursuant to this statute, we hold that, in Ohio, the jurisdiction of the probate division over trustees is limited to testamentary trustees and the probate division has no control over the trustees of *inter vivos* trusts. See *Purcell* v. *Cleveland Trust Co.* (1965), 6 Ohio App. 2d 235 [35 O.O.2d 426], and *Dollar Savings & Trust Co.* v. *First National Bank* (C.P. 1972), 32 Ohio Misc. 81, 92-93 [61 O.O.2d 134]. Under the same statute, we also hold that, generally speaking, the probate division has no jurisdiction over claims for money damages arising from allegations of fraud. See *Alexander* v. *Compton* (1978), 57 Ohio App. 2d 89 [11 O.O.3d 81]. Hence, the

issues raised by the complaint in the underlying action here were solely within the jurisdiction of the court of common pleas, general division, and never should have been transferred in the first instance by Judge Rader to the probate division.

### B

The next issue necessary to our review of the judgment below is whether Judge Gillie, as administrative judge, had authority to return the underlying case to the general division of the court of common pleas. The answer is found in C.P. Sup. R. 3(B):

"The administrative judge shall be the presiding officer of his division and shall have full responsibility for and control over the administration, docket and calendar of the division which he serves. He shall cause cases to be assigned to the judges *within the division* * * *." (Emphasis added.)

Thus, since Judge Rader should not have transferred the case to a division of the court which had no jurisdiction, Judge Gillie, as administrative judge, certainly would have authority to retrieve it and to return it to the general division, which did have jurisdiction.

### C

The final question to be decided is whether Judge Gillie, as administrative judge, had power to assign Judge Metcalf of the probate division to hear a case in the general division of the court of common pleas.[2]

Section 5(A)(3), Article IV of the Ohio Constitution, states:

"The chief justice or acting chief justice, as necessity arises, shall assign any judge of a court of common pleas or a division thereof temporarily to sit or hold court on any other court of common pleas or division thereof * * *. Rules may be adopted to provide for the temporary assignment of judges to sit and hold court in any court established by law."

Pursuant to this constitutionally conferred authority, the General Assembly has enacted R.C. 2503.04, which provides for the assignment of judges by the Chief Justice to relieve overcrowded dockets:

"* * * When an unusual number of cases have accumulated in the court of common pleas of any county, the chief justice may, without re-

---

[2] A similar issue was presented in *State, ex rel. Sowell,* v. *Lovinger* (1983), 6 Ohio St. 3d 21, where an unelected acting judge was assigned to a case instead of a duly elected and qualified member of the judiciary. This court stated at 23: "Moreover, we find that the allegations of the complaint, if proven, would present a claim that appellee Lovinger is 'without jurisdiction whatsoever to act, [and in such a case,] the availability or adequacy of a remedy of appeal to prevent injustice is immaterial to the exercise of supervisory jurisdiction by a superior court to prevent usurpation of jurisdiction by the inferior court.' " This court reversed the court of appeals' dismissal of the action and remanded it for further consideration.

As already noted, the administrative judge of a court of common pleas does have power to transfer cases, and whether that power was properly used is a subject for appeal. *State, ex rel. Berger,* v. *McMonagle* (1983), 6 Ohio St. 3d 28. The transfer of a case involves an exercise of judicial discretion, with which this court generally will not interfere. See *State, ex rel. Kennedy,* v. *Bd. of Elections* (1976), 46 Ohio St. 2d 37, 40 [75 O.O.2d 100]; *State, ex rel. Ticknor,* v. *Randall* (1949), 152 Ohio St. 129, 131 [39 O.O. 440]; *State, ex rel. Shively,* v. *Nicholas* (1949), 151 Ohio St. 179 [39 O.O. 21], paragraph one of the syllabus.

quest, assign judges from other counties to aid in the disposition of such business. When the number of cases pending in the court of common pleas of any county exceeds seventy-five per cent of the number of cases filed during the preceding year, the chief justice, without request, shall assign judges from other counties to aid in the disposition of such business, and the chief justice shall, at such times as he may desire, and not less than once each year, ascertain the number of cases pending in the court of common pleas in each county. * * *''

Similarly, under the same constitutional authority, C.P. Sup. R. 2 provides the sole authority for transfers of judges from one division to another other than by assignment of the Chief Justice:

"In counties having more than one common pleas judge, the judges thereof shall * * * select one of their number to act as presiding judge * * *. The selection of the presiding judge shall be by majority vote * * *.

''* * *

''* * * The presiding judge shall * * * assign judges from one division of the court to serve another division * * *.''[3]

We conclude then that only the Chief Justice, Acting Chief Justice of this court, or the presiding judge of a court of common pleas can assign a judge from one division of the same court to another division.[4]

## D

To secure a writ of prohibition from this court, appellants must meet three conditions. They must show that Judge Metcalf is about to exercise judicial power; that his exercise of that power is not legally authorized; and that should the writ not issue, they will suffer injury for which there is no other adequate remedy at law. See *State, ex rel. McGraw,* v. *Gorman* (1985), 17 Ohio St. 3d 147, 150; *Bobb* v. *Marchant* (1984), 14 Ohio St. 3d 1, 3.

The first requirement is satisfied. If we refuse the writ, Judge Metcalf

---

[3] In counties having but one common pleas court judge, he or she, of course, is also the presiding judge.

[4] Only in specified instances are administrative judges given authority to assign judges. Where a judge becomes disabled during trial, both the Civil Rules and Criminal Rules provide, in virtually identical language, as follows: "If for any reason the judge before whom a jury trial has been commenced is unable to proceed with the trial, another judge, designated by the administrative judge, or in the case of a single-judge division by the chief justice of the supreme court, may proceed with and finish the trial upon certifying in the record that he has familiarized himself with the record of the trial; but if such other judge is satisfied that he cannot adequately familiarize himself with the record, he may in his discretion grant a new trial." Civ. R. 63(A); Crim. R. 25(A).

See, also, R.C. 1901.10 which allows the judge of a single-magistrate municipal court to appoint an acting judge in his absence.

Where a judge is prejudiced, interested or otherwise disqualified to sit in a cause before him, it is the Chief Justice who is authorized by law to name a substitute judge. See R.C. 2101.39 (probate court judges), R.C. 2501.13 (appeals court judges), R.C. 2701.03 (common pleas court judges), and R.C. 2937.20 (judges of courts inferior to common pleas).

will undoubtedly proceed to exercise judicial power and will hear the underlying suit in this case.

The second criterion is likewise satisfied. Judge Metcalf, as already discussed, was assigned by the administrative judge of the general division. The administrative judge only has *intra*-division authority over the cases of his or her division and has no *inter*-division authority to assign judges from one division of the court to another. We recognize that C.P. Sup. R. 2 does permit a presiding judge to also be elected administrative judge of a division, but such is not the situation in the case at bar because Judge Gillie acted solely in his capacity as the general division's administrative judge.[5] Unless and until appointed to the general division by the Chief Justice of this court, Acting Chief Justice or the presiding judge of the common pleas court, Judge Metcalf's judicial power extends only to matters within the probate division to which he was elected.

The final requisite for prohibition also is met in this case. The appellants have no adequate remedy at law, since the right to challenge the assignment of a judge from the probate division to the general division would be unavailable on appeal. Cf. *State, ex rel. Sowell,* v. *Lovinger* (1983), 6 Ohio St. 3d 21.

If Judge Metcalf is allowed to proceed in a case to which he has not been lawfully assigned, and in which he will address issues outside probate jurisdiction,[6] his judgment will be ineffective. "The decree of a probate court in Ohio, involving the exercise of * * * general jurisdiction * * * must be considered as *coram non judice* and void." "In so far, therefore, as the decree * * * [goes] beyond the jurisdiction of a probate court, it is to be treated as void * * *." *Gilliland* v. *Admrs. of Sellers* (1853), 2 Ohio St. 223, paragraphs five and seven of the syllabus. As a result, appellants would sustain the injury of having to retry the underlying case before a judge who is qualified to act. Moreover, assuming their allegations to be true, appellants would suffer further detriment because the intervenors could continue with their conflicts of interest and self-dealing until the issues could be adjudicated in a second trial.[7]

Considerations of public policy supporting the finality of judicial pro-

---

[5] The decision and journal entry which purports to assign Judge Metcalf to the general division was approved by "Judge William T. Gillie, Administrative Judge," and not by the court's presiding judge.

[6] Appellees seemed to argue below that the acquiescence of the parties should prevent them from objecting to Judge Metcalf's hearing of the case. This contention is meritless. Although jurisdiction can be acquired over the person by consent, *Scott* v. *Davis* (1962), 173 Ohio St. 252, 254 [19 O.O.2d 77], "[t]he parties may not, by stipulation or agreement, confer subject-matter jurisdiction on a court, where subject-matter jurisdiction is otherwise lacking." *Fox* v. *Eaton Corp.* (1976), 48 Ohio St. 2d 236, 238 [2 O.O.3d 408]; *In re Koellner* (1954), 160 Ohio St. 504, 507 [52 O.O. 379]; *Miller* v. *Miller* (1951), 154 Ohio St. 530 [43 O.O. 496], paragraph three of the syllabus.

[7] We, of course, express no opinion as to the merits of the complaint filed in the underlying action.

nouncements require that today's decision have prospective application only. The validity of other judgments rendered prior to the date of this decision shall not be affected. Cf. *Hoover* v. *Bd. of Franklin Cty. Commrs.* (1985), 19 Ohio St. 3d 1, 7.

The judgment of the court of appeals is reversed and the writ prayed for is allowed.

*Judgment reversed
and writ allowed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.